**BETTELEY et v FISHER BROS. CO.**

Ohio Appeals, 8th Dist, Cuyahoga Co.

No. 17489.   Decided March 4, 1940

M. E. Eckstein, Esq., Cleveland, for plaintiffs-appellants.

Reasner & Wieber, Cleveland, for defendant-appellee.

**OPINION**

By TERRELL, PJ.

Plaintiffs were the children and the beneficiaries in a life insurance policy, under a group plan issued by The Equitable Life Assurance Company to The Fisher Brothers Company. This insurance policy was for the protection of the employees of said company. A master policy was issued to The Fisher Brothers Copany. A certificate thereunder was issued to Edwin Betteley, the employee, who was the father of these plaintiffs. Upon the death of Edwin Betteley, plaintiffs sought to recover the benefits provided for under the policy.

The present action was instituted against the insurance company and against The Fisher Brothers Co. The insurance company was dismissed out of the action and it is pending only against The Fisher Brothers Company.

The policy provides, under Section 6, Special Provisions:

"Upon termination of employment as shown by the Employer's records, the insurance upon the life of any employee terminates automatically unless continued under the individual conversion option."

The policy further provides that,

"Upon termination of employment for any reason whatsoever, the employee shall be entitled to have issued to him by the Society without further evidence of insurability, and upon application made to the Society within thirty-one (31) days after such termination, and upon the payment of the premium applicable to the class of risk to which he belongs, and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the Society * * *."

Decedent employee worked for a number of years for The Fisher Brothers Company, and was insured gratis under this group form of insurance, The Fisher Brothers Company, the employer, paying all the premiums thereon, the employee paying nothing.

The evidence shows that the insured decedent employee became disabled because of a hernia, and was laid off from his employment to recuperate. This continued for a period of about a year and a half during all of which time the insurance upon him under the group

84

plan policy was kept alive and paid by The Fisher Brothers Company. Finally, having been informed by the plaintiff, Wilton G. Betteley, the son of the decedent employee, that his father would not be able to return to active employment, The Fisher Brothers Company made notations upon its records of employment that said employee had resigned. The Fisher Brothers Company thereupon discontinued the payment of premiums for said employee and had the contract of insurance as to him, cancelled. Said employee died five or six months later.

It is now contended by the plaintiffs that The Fisher Brothers Company was required under the law to notify the decedent employee of the entry of termination of his employment upon its records, so that thereupon he could be advised and enabled to exercise his rights under said group plan policy which provided that within thirty-one (31) days he would have the option of converting said group plan insurance as to him into some other form of insurance policy with the company without the necessity of any further evidence of insurability.

To further substantiate this claim, the plaintiff sets forth his own evidence wherein he contends that The Fisher Brothers Company, through its District Supervisor, Mr. Buchan, stated to him, the plaintiff, Wilton G. Betteley, that The Fisher Brothers Company would keep alive the insurance and pay the premiums thereon "for the time being".

Upon this condition of facts, plaintiffs contend that there was a legal duty upon The Fisher Brothers Company to so advise its said employee of the entry on its records of employment that he had resigned and that not having so advised him, he and his beneficiaries were caused to lose a valuable right in the exercise of the conversion option, whereby The Fisher Brothers Company should respond to the plaintiffs in the amount of said insurance policy.

The arrangement whereby The Fisher Brothers Company undertook to insure the life of its employee was wholly gratuitous. The employee paid nothing toward it. The contract of insurance could have been discontinued by The Fisher Brothers Company at any time without legal liability to the employee. Of course, if the employee had been notified that upon the records of employment of The Fisher Brothers Company they had shown a discontinuance of his employment, he would have been enabled to exercise this option to convert his insurance, but that does not place upon the employer the legal duty to so notify the employee. The employee had the knowledge first hand that he was not physically able to return to his employment. His son, the plaintiff herein, also knew that his father would not be able to return to active employment. The father and son knew the terms of the insurance policy which provided that the insurance should continue only so long as the employee should continue in the employment of the employer. The notation or information conveyed by The Fisher Brothers Company to the employee that he had severed his employment from the company would add nothing to his own knowledge of the facts.

Under this policy there would probably devolve upon The Fisher Brothers Company the duty to notify the insurance company of the termination of the employment of any employee but in this case for a period of a year and a half The Fisher Brothers Company voluntarily and without cost to the employee, kept alive his insurance policy during a time when he did not engage in employment with the Company. Surely The Fisher Brothers Company should not be condemned by the employee or his beneficiaries, for keeping alive said policy during that period. Under the circumstances in this case we cannot see any legal liability imposed upon The Fisher Brothers Company to notify the employee that he had severed his employment with said company.

Accordingly we are of the opinion that there was no error by the trial court in directing a verdict for the de-

fendant, and the judgment is therefore affirmed.

LIEGHLEY, J., concurs.

MORGAN, J., dissents.

MORGAN, J. (Dissenting):

In this case the trial court directed a verdict for the defendant, The Fisher Brothers Company, at the conclusion of all the evidence. The plaintiffs filed their appeal on law.

The Fisher Brothers Company procured a group plan of insurance from The Equitable Life Assurance Society for the benefit of its employees. All premiums on the policy were paid by The Fisher Brothers Company, without any contribution from the employees. Among the employees was Edwin Betteley, who was first insured by the company under the group plan in 1924 for $500.00. Under the terms of the policy, the amount of the insurance increased with the length of the service of each employee so that in 1934 the amount of the insurance on Edwin Betteley's life had increased to $2100.00.

On September 8, 1934, Mr. Betteley, then 73 years of age, was laid off because he was suffering from a hernia and he also had heart trouble. His last employment was in the store of the defendant company at Willoughby, Ohio, of which his son, Wilton G. Betteley, who is one of the beneficiaries under the policy, was the manager. Shortly after September 8, 1934, Mr. Wilton G. Betteley testified that he said to Mr. Buchan, superintendent of the defendant company, that his father desired to convert his policy and carry it because "we didn't want to lose the insurance." Section 5 of the group policy is set forth in the majority opinion and under it every employee of the company upon the termination of employment for any reason whatsoever, had the absolute right, without furnishing any further evidence of insurability, to convert the policy to one of the forms customarily issued by the insurance company, provided the employee should file his application with the insurance company for such conversion within thirty-one (31) days after the termination of

his employment. Edwin Betteley was clearly not an insurance risk when he was laid off because of ill health and his desire to convert his insurance is easy to understand.

The son further testified that Mr. Buchan, after conferring with the principal officers of the defendant company, reported back to him that it would not be necessary to convert the policy as the premiums would continue to be paid by the defendant company. The son also testified that about the same time he spoke to Mr. Conway, the secretary and treasurer, and to Mr. Grady, the general superintendent of the defendant company, as to the father's wish to convert the insurance policy, and they stated that the company would keep up the insurance, as it desired to show its appreciation for the father's long service with the company.

The evidence discloses that it was the custom of the company in some cases, where an employee of more than ten years continuous service to the company was laid off, to continue the insurance and the company was authorized to take such action by Section 2 of the group policy, as follows:

"2. If an employee should become disabled from any cause occurring while insured under this contract, so as to be unable to perform any occupation or work for gain or profit, the employer may continue payment of premiums for the insurance on the life of such employee while so disabled, in which event, the insurance shall continue in force during the period for which premiums are paid."

Some of the officers of the defendant company did not recall the conversations testified to by Wilton Betteley, the son, but Mr. Buchan, the district superintendent of the defendant company, testified that the son did speak to him about the wish of his father to convert his insurance and that after conferring with the company's officers, Mr. Buchan brought back the message to the son that "the company would carry the father's insurance for the time being".

The company continued to carry the father's insurance for about twenty months or until May 18, 1936, when the company made an entry on its records showing that on that day the father had resigned his employment with the company and his insurance was immediately cancelled by notice to the insurance company.

It is conceded in this case that the defendant company gave no notice either to the father or to the son at any time that the father's employment had been terminted or of the cancellation of the father's insurance under the group policy. It is also undisputed that for thirty-one (31) days after May 18, 1936, the father had the absolute right to convert his insurance, a right of which he could not have been deprived either by the insurance company or by the defendant company. The father, not being aware of the termination of his employment or of the cancellation of his policy, of course took no steps to convert his insurance. He died about six months thereafter and shortly after his death, the son and a sister approached the defendant company with a view to collect the insurance, and then, for the first time, learned that the father's employment had been terminated and the policy had been cancelled on May 18, 1936.

Mr. Buchan, superintendent for the defendant company, testified that after the father had been laid off on September 8, 1934, he inquired every month or so of the son concerning his father's health and that in May, 1936, replying to such an inquiry, the son said: "Dad is in pretty bad shape and will never be able to work again." The son made no statement to Mr. Buchan to the effect that he was authorized by his father to turn in his resignation and there is no evidence that he had any such authority. Nevertheless, the defendant at the hearing argued that the company had the right to construe the son's remark as a resignation by the father of his position, and that notice to the father or son by the company as to the termination of the father's employment and the cancellation of his insurance would have been superfluous.

It is my clear conviction that this position of the company can not be maintained. By reason of the failure of the defendant company to notify either father or son of the termination of the father's employment, the case for the company, in my judgment, stands no better than if it had decided on May 18, 1936, without any further conversation with either father or son, to terminate the father's employment and to cancel his insurance and thereafter gave no notice of any kind to anyone other than the insurance company.

The construction now attempted to be placed by the defendant company on the son's statement to Mr. Buchan in May, 1936, as to his father's health is strained and far-fetched. No one reading this record can come to any other conclusion than that neither the son nor the father had any reason to believe that the status of employment of the father had been changed by anything said by the son to Mr. Buchan.

It is true that the action of the defendant company in taking out and maintaining group insurance was gratuitous. It could have decided at any time not to continue such insurance and could have discontinued paying premiums and cancelled the policy. Nevertheless, so long as the policy continued in existence, an employee of the company, whose employment had been terminated, had a definite right, under the policy, of which he could not be deprived, to convert it at any time within thirty-one (31) days after the termination of the employment. Furthermore, such right exists as truly in a policy to which the employees do not contribute as in the case of a group policy whose premiums are paid in part by the company and in part by its employees.

Neither the defendant nor the insurance company could have deprived the father of his right to convert the policy during the thirty-one days fixed by the policy. However, the right of conversion was of no value to any em-

ployee unless such employee had been put on notice that his employment was terminated. Not to give such notice virtually was to deny the right. Its effect was to accomplish indirectly what the employing company had no right to do directly.

Under the facts of the instant case it would seem that nothing unreasonable is being asked of the defendant company to notify the father of the termination of his employment. Such notice at most would cost only the expense of a two cent stamp or even that could be saved by delivering the notice in person. It would not even be necessary to add to the notice a statement that the father's insurance had been cancelled, as the certificate of insurance previously delivered to the father put him on notice that on the termination of his employment his insurance would be cancelled.

In the reported cases generally dealing with group insurance policies, the controversy has been between the beneficiaries under a group policy and the insurance company, and usually turned on the question whether the deceased person was an employee at the time of his death. We do not find that the question presented by this case has ever been decided in Ohio, although the defendant company cites and principally relies on two Ohio Appellate Court decisions.

In **Aetna Life Insurance Company v Lembright, 32 Oh Ap 10,** Irene Lembright brought suit against the insurance company as beneficiary of a group insurance policy issued to her uncle, J. H. Lester, a former employee of The Hinde & Dauche Company. Mr. Lester died on May 13, 1926 and the record of the company shows that his employment had been terminated on April 30, 1925. The Court of Appeals found that,

"the policy was cancelled as to Lester at the latter's request because he was not intending to return to work."

Clearly, on such facts, the beneficiary had no claim against the insurance company.

In **Thull, Admrx. v Equitable Life Assurance Society, 40 Oh Ap 486,** it appears that John Mohler had been an employee of the Barnes Manufacturing Company. He was laid off or "temporarily discharged" on July 17, 1930, and paid in full on that date. He never worked for the company after July 17th and he was instantly killed in an automobile accident on August 3, 1930. There was a provision in the group insurance policy to the effect that an employer might elect to consider all employees temporarily laid off to be still in the employment of the employer. But the court further stated, on page 489:

"This is further made dependent upon the employer performing certain things and upon certain conditions which it is now conceded the employer did not perform and comply with."

As to the right given the employee to convert his insurance after termination of employment, the court said:

"The employe's certificate apprised him that termination of his employment ended the insurance in his favor and neither the employer nor the insurer was under a duty to notify him that he was not covered by insurance."

In both of these Ohio cases there had been a termination of the employee's employment and in both cases the employee was notified of his discharge. The employer took no steps to keep the policy alive for the benefit of the employee. Clearly, the court in Thull, Admrx. v Equitable Life Assurance Society, supra, was right in holding that the employer did its full duty in giving to the employee notice of the termination of his employment, because the certificate of insurance in the employee's possession put him on notice that on such termination of employment the insurance in his favor would be cancelled.

In the case of Emerick, appellant, v Connecticut General Life Insurance Company, appellee, 120 Conn. 60, 105 A. L. R. 413, the facts were strikingly similar to those of the instant case. The

action was brought against the insurance company and not against the employer. The plaintiff was the beneficiary of a group policy of insurance of Robert C. Emerick, an employee of The Pratt & Whitney Company. Emerick was temporarily laid off on or about February 7, 1931. The employer continued to carry Emerick's insurance under the group policy, but on October 28, 1931 The Pratt & Whitney Company notified the defendant insurance company that Emerick had been laid off as of October 1, 1931, and that his insurance was to be considered cancelled.

The court found that "no notice of the termination of his employment or of the cancellation of the policy was given to Emerick or the plaintiff." Emerick died and the father, the beneficiary, brought suit on the policy. The court said, on page 417:

"The ultimate question is,—what is the meaning of the phrase 'termination of employment' as used in the policy? It clearly does not mean the cessation of active employment or the termination of an existing contract of employment. It must mean such a termination of the relationship of employer and employee as will make effective all parts of the insurance contract. Viewing the policy as a whole, in order to make effective all its terms, we must construe the phrase as meaning a termination of which the employee had knowledge or notice."

The court also said:

"There could be no termination of the employment under the policy without knowledge or notice of it to the employee."

The Connecticut court therefore rendered judgment for the plaintiff against the insurance company, on the ground that on the facts of the case the employer could not terminate Emerick's employment without notice to him.

It is of course not necessary to go so far in order to hold the employer liable in the instant case. In this action originally, both the employer, The Fisher Brothers Company, and the insurance company were made joint parties defendant, the insurance company later being dismissed from the case on a demurrer to the petition.

The only appeal taken by the plaintiff was to the judgment in favor of The Fisher Brothers Company. For the purpose of this appeal it is to be regretted that we do not have presented to us the question of liability of the insurance company, as well as of the employer. We doubt however, whether we would follow the Connecticut case in holding that a notice to the employee of his discharge is a condition of the termination of his employment. However, a court which holds that an employer was without power to terminate the employment of an employee because of his rights under a group policy of insurance would have little difficulty in coming to the conclusion that there rested a duty on the employer to notify the employee of the termination of his employment so that he could, within the thirty-one (31) days thereafter, exercise the privilege of converting the insurance given him by the policy.

This precise question was considered by the court in Ozanich v The Metropolitan Life Insurance Company, 180 Atl. 67. This case was heard and decided on appeal by the seven judges of the Superior Court of Pennsylvania. The suit was filed against the insurance company by the beneficiary of a group insurance policy issued by The Pressed Steel Car Company for the benefit of, among others, John Ozanich, an employee. The question involved in this case was whether or not John Ozanich was an employee of The Pressed Steel Car Company at the time of his death. The court, however, considered the question involved in the instant case, namely, the conversion privileges given by the policy to a discharged employee and the duty of the employer to notify an employee of his discharge. The court said:

"The policy and certificate provided that in case of the termination of the insured employee's employment for any reason whatever, the insured employee

should be entitled to have issued to him by the insurance company, without evidence of insurability, and upon application to the insurance company within thirty-one (31) days after such termination, and upon payment of the proper premium applicable, a policy of life insurance in any one of the forms customarily issued by such company, except term insurance, in an amount equal to the amount of the insurance under said group policy at the time of such termination. This clause, while not directly applicable in this case, shows that the policy contemplated notice to the employee, as well as to the insurance company, of any action on the part of the employer terminating his employment."

On a rehearing of this case, reported in 180 Atl. 576 the Superior Court of Pennsylvania definitely held that the obligation to notify the employee of the termination of his employment rests on the employer and not on the insurance company. The court said:

"We did not say, and had no thought of intimating, that the clause in the policy and certificate entitled the insured employee, on the termination of his employment, to have issued to him by the insurance company, on application made within thirty-one (31) days after such termination, without evidence of insurability, a policy of life insurance, etc., contemplated any notice by the insurance company to the employee of any action on the part of the employer terminating his employment. We think the meaning of the opinion is clear that the clause above referred to, contemplates that an employer terminating the employment of an employee, by discharge, shall do so in such a way that the employee has notice or knowledge that his employment is terminated."

Defendant has referred us to the case of Kowalski, Admr. v Aetna Life Insurance Company, 266 Mass. 255. This case is not in point, because the employee was not laid off but was discharged and the employer gave no assurance to the employee that the insurance would be continued by it.

In the syllabus of the case, the court said:

"The employment terminated when the employee ceased to work; he was not then 'laid off' nor given leave of absence."

In **Hinkler, appellee v Equitable Life Assurance Society, 61 Oh Ap 140,** the First District Court of Appeals held:

"The beneficiary of a group life insurance policy has a vested interest thereunder," and "the policy cannot be cancelled so as to deprive an employee of the grace period of thirty-one days after the last payment made so that if the insured dies within the grace period the beneficiary can recover on the policy."

This was also the holding in Ozanich v Metropolitan Life Insurance Company, 180 Atl. 67, supra.

In the last two cases referred to, it was decided that employees as well as the employer, under a group insurance policy, have the right to thirty-one (31) days grace given by the policy for the payment of premiums. There can be no question, however, as to the right of a discharged employee to convert his insurance within thirty-one (31) days after his discharge because it is so specifically provided in Section 5 of the policy.

When an employee is laid off and is no longer on the payroll, such fact, of necessity, is within the knowledge of the employee and no further notice need be given to the employee of his discharge, unless the employer takes positive action to continue the employee's insurance, as the defendant company did in the instant case.

The case we are now considering is quite different. The company took advantage of section 2 of the policy and continued the employee's insurance. The superintendent of the defendant company admits that he told one of the beneficiaries of the policy that it would be continued "for the time being". The

evidence of the beneficiary was to the effect that the company stated that it would continue the policy indefinitely. Under the facts in this case, if and when the company decided not to continue the employee's insurance it was under the obligation to notify the employee of the changed status of his employment. To do less than that would be to deprive him of the opportunity of exercising his absolute right of converting his insurance, as truly as if the company had attempted to revoke or to cancel such right.

What is there in the record to show, if the father had been told of the termination of his employment in May, 1936, that he would have converted his insurance within the thirty-one days allowed? The evidence shows that in September, 1934, he wished to convert his insurance. He was then 73 years of age and his health did not improve thereafter but became progressively worse. Every reason that impelled the father in 1934 to determine to convert his insurance existed to a greater extent in May, 1936.

Who has been injured by the failure of the defendant either to continue to carry the father's insurance or to notify the father that his employment had been terminated? Clearly those who the father believed would receive at his death his insurance, namely, the beneficiaries of the policy, the plaintiffs in this action. It cannot be shown with certainty that the plaintiff would have converted his insurance in May, 1936, if properly notified of his discharge, or that he would have named the plaintiffs as beneficiaries in the converted policy. But we should keep in mind that the law deals usually with probabilities and seldom with certainties. There is not here simply a preponderance of proof, but in my opinion there is proof beyond a reasonable doubt in this case that if the father had been given an opportunity he would have converted his insurance for the benefit of his named beneficiaries, his son and daughter, the plaintiffs in this action.

In our consideration of the case to this point we have accepted defendant's position that the father was only laid off and not discharged on September 8, 1934. The evidence of the son, however, discloses that both his father and he believed that the father's employment had been terminated on September 8, 1934. This is confirmed by the fact that immediately thereafter the son approached the company in behalf of the father to convert the latter's insurance. The most striking confirmation of this, however, is to be found in the records of the defendant company.

In plaintiff's Exhibit B, which is the record kept by the defendant company, of Edwin C. Betteley as an employe, appears the following entry:

"Resigned:  9-8-34
Discharged:  Sickness"

If the father resigned or was discharged on September 8, 1934, as shown by the above entry, then clearly the father had thirty-one (31) days thereafter to convert his insurance and he was deterred from so doing by the promise of the company to continue his insurance. This makes an even stronger case for the plaintiff in this action because defendant's promise prevented the father from exercising an undoubted right.

That a promise acted and relied upon may work an estoppel even when it might be difficult to establish a technical consideration is a generally accepted legal principle.

In its article on Estoppel, 19 American Jurisprudence, Section 53, page 657 states:

"PROMISSORY ESTOPPEL:  The broad rule stated in the preceding section to the effect that a promise to do or not to do something in the future does not work an estoppel must be qualified, since there are numerous cases in which an estoppel has been predicated on promises or assurances as to future conduct. The doctrine of "promissory estoppel" is by no means new, although the name has been adopted only in comparatively recent years. According to that doctrine an estoppel may arise from the making of a promise, even though without consideration,

if it was intended that the promise should be relied upon and in fact it was relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice. Promissory estoppel is sometimes spoken of as a species of consideration or as a substitute for, or the equivalent of, consideration, but the basis of the doctrine is not so much one of contract with a substitute for consideration, as an application of the general principle of estoppel, since the estoppel may arise although the change of position of the promise was not in any way an inducement to the promise and was not regarded by the parties as any consideration therefor.

The doctrine of promissory estoppel is most widely recognized and most frequently applied in cases of promises or representation as to an intended abandonment of existing rights. Some courts have even stated that these are the only cases in which promises as to the future may be the basis of an estoppel. The better-considered statements of the doctrine, however, do not contain this limitation, and the courts have actually applied the doctrine in numerous instances which could not fairly be said to involve an abandonment of an existing right."

The cases are collected in 115 A. L. R. page 152, being annotations to the case of Fried v Fisher, 115 A. L. R. 147, 328 Pa. 497. The principle on which the case rests is stated in the first paragraph of the syllabus:

"1. An estoppel may arise from the the making of a promise, even though without consideration, if it was intended that the promise be relied upon and in fact it was relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or result in other injustices."

It is not important that a case like this one on the facts has never been considered by an Ohio court. It is only recently that group policies of insurance have come into extensive use and the law on the subject and as to labor relations generally is in the making. The courts have the opportunity to declare the law in group insurance cases, freed from technicalities, and unhampered by self-imposed restrictions. Whether the basis of the decision in this case is called promissory estoppel is likewise not of very great importance. It has always been the genuius of the common law to decide cases on the principle of justice and fair dealing, and frequently without much regard into what particular niche the case would be placed in the completed structure of the law. That work is left largely to law professors and legal theorists.

For the reasons stated, it is my opinion that final judgment should be entered in this case for the amount payable to the beneficiaries under the group insurance policy of Edwin C. Betteley, which is the same amount which would have been payable at his death to the beneficiaries if the policy had been converted.